1        **UNITED STATES DISTRICT COURT**

2          **FOR THE DISTRICT OF ARIZONA**

3                _____

4

   **CMS Mechanical Services, LLC,** )

5                                     )   **No. CV 15-2040-PHX-NVW**
              Plaintiff,              )

6                                     )
         vs.                          )   Phoenix, Arizona

7                                     )   January 21, 2016
   **PetSmart, Inc.,**                )   1:37 p.m.

8                                     )
              Defendant.              )

9   _____)

10

11        **BEFORE:   THE HONORABLE NEIL V. WAKE, JUDGE**

12        <u>**REPORTER'S TRANSCRIPT OF PROCEEDINGS**</u>

13             **(*Scheduling Conference*)**

14

15

16

17

18

19

20

21   Official Court Reporter:
     Laurie A. Adams, RMR, CRR

22   Sandra Day O'Connor U.S. Courthouse, Suite 312
     401 West Washington Street, Spc 43

23   Phoenix, Arizona 85003-2151
     (602) 322-7256

24
     Proceedings Reported by Stenographic Court Reporter

25   Transcript Prepared by Computer-Aided Transcription

```
 1    APPEARANCES:

 2    For the Plaintiff:
              OSBORN MALEDON PA
 3            By:  Geoffrey MT Sturr, Esq.
              By:  Hayleigh S. Crawford, Esq.
 4            P.O. Box 36379
              Phoenix, Arizona 85067
 5
              ALLWEISS & ALLWEISS
 6            By:  Michael D. Allweiss, Esq.
              913 31st Terrace NE
 7            St. Petersburg, Florida 33704

 8    For the Defendant:

 9            DENTONS US LLP - Phoenix, AZ
              By:  Joshua S. Akbar, Esq.
10            2398 East Camelback Road
              Suite 850
11            Phoenix, Arizona 85016

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1                       P R O C E E D I N G S
2              THE COURTROOM DEPUTY:  This is Civil Case 2015-2040,
3      CMS Mechanical Services, LLC, versus PetSmart, Incorporated.
4      This is the time set for a scheduling conference.
5              Counsel, please announce for the record.              13:37:37
6              MR. STURR:  Good afternoon, Your Honor.  Geoffrey
7      Sturr and Hayleigh Crawford from Osborn Maledon on behalf of
8      the plaintiff/counterdefendant.  With us is Michael Allweiss
9      who has been admitted pro hac vice.
10             THE COURT:  Mr. Allweiss, what firm are you with?     13:37:50
11             MR. ALLWEISS:  I am with my father, Allweiss &
12     Allweiss.  He's the first Allweiss.  I have to tell everybody
13     that in the name.  But he and I have been practicing together
14     now about 20 years.
15             THE COURT:  Where are you from?                       13:38:05
16             MR. ALLWEISS:  St. Petersburg, Florida.
17             THE COURT:  Oh.  Okay.  You are the Florida guy.
18             MR. ALLWEISS:  I'm the Florida guy.  Yeah.
19             THE COURT:  And Ms. Crawford, I don't think you have
20     been in my court before.                                     13:38:18
21             MS. CRAWFORD:  I have not.  My first time.
22             THE COURT:  I don't need to welcome you because I know
23     you.
24             Mr. Akbar.
25             MR. AKBAR:  Good afternoon, Your Honor.  I'm here on   13:38:26
```

1  behalf of the defendant and the counterplaintiff, PetSmart.

2        THE COURT:  All right.  Now, I didn't know Denton was

3  in Phoenix.

4        MR. AKBAR:  We are.  We opened our office here in

5  2006, very small office.  And to this day we're pretty small.        13:38:39

6  Sort of an anomaly within the firm being the largest firm in

7  the world now with this 10-lawyer office.

8        THE COURT:  Are you a Phoenix guy they brought in or

9  somebody they brought to Phoenix?

10        MR. AKBAR:  The latter, technically.  I actually        13:38:57

11  started with the firm's New York office out of law school.  I

12  worked there four and-a-half years.  And when I moved here,

13  which is home for me, the office had just opened so it worked

14  out great.

15        THE COURT:  Pretty good gig for you to be here instead   13:39:09

16  of New York.

17        MR. AKBAR:  Yes.

18        THE COURT:  All right.  Well, I thought I was reading

19  a first year contracts exam question on this.  So I would send

20  it to my former professor, but he's not with us anymore.  So   13:39:23

21  this is quite an interesting dispute.

22        And the initial disclosures have been exchanged, and

23  no one contemplates any amended pleadings.

24        And I commend you for your mutual desire to try to

25  simplify this to the extent you have undisputed facts or        13:39:52

1    history.  It looks like an awful lot of this will be

2    undisputed.  Some of it probably will be.  But you can really

3    economize this if you can focus on the genuine disputes.

4         Now, tell me about what -- well, you all say you

5    contemplate about 10 depositions.  Just walk me through who                13:40:28

6    those are, what the players are.  First of all, are you pretty

7    much agreed on the scope of depositions?

8         MR. STURR:  Your Honor, I believe we are.  In our

9    26(f) conference, we discussed who was likely to be deposed and

10   agreed on the number that's set forth in the report.                       13:40:47

11        THE COURT:  Tell me who they are, or at least if you

12   don't have the names, at least what their roles are.

13        MR. STURR:  From our side, from the plaintiff's side,

14   we have two principal witnesses:  The president of the company,

15   his last name is Robert Bull.                                              13:41:08

16        Is that right?

17        MR. ALLWEISS:  Yes.

18        MR. STURR:  And Tommy -- his last name?  I'm sorry.

19        MR. ALLWEISS:  Tommy Barnes, Your Honor.  He's

20   essentially the sales rep/account manager for the PetSmart                 13:41:16

21   account.  Those are the two primary witnesses.  There's

22   obviously, as Your Honor has been able to glean from the

23   pleading, you essentially have a lot of work being done and

24   then you have got what the transaction, the contract ultimately

25   was.                                                                       13:41:37

1          So from our standpoint, then, there's a couple or

2     three principal actors from PetSmart who were part of those

3     negotiations and the transaction that we're going to need to

4     depose.

5               THE COURT:  About three.                                13:41:58

6               MR. ALLWEISS:  Yeah.

7               THE COURT:  And what else?

8               MR. ALLWEISS:  From our standpoint?

9               THE COURT:  Yes.

10              MR. ALLWEISS:  We haven't anticipated anybody else       13:42:05

11    yet, Judge.  What's happening, Your Honor, is as -- you know,

12    we're already exchanging documents and whatnot so e-mails pop

13    up, communications pop up where you have got people cc'd on

14    things so their names are coming up.  So we're probably going

15    to have to do some exploring on both sides, why was this guy     13:42:23

16    copied, did he participate in anything, we need to talk to him,

17    that sort of thing.

18              From PetSmart's side, I don't mean to speak for

19    counsel, but I will.  Part of their counterclaim has an

20    allegation that some work was done not properly or not in        13:42:42

21    accordance with the agreement, so depending on the scope and

22    size of that and you are going to have technicians and whatnot

23    who might have to be involved as well.

24              THE COURT:  All right.  Mr. Akbar, do you have

25    anything to add to that?                                          13:42:58

1          MR. AKBAR:  No, Your Honor, except that from our

2    standpoint, two gentlemen that they have identified at CMS

3    currently we have identified those individuals as well.  As Mr.

4    Allweiss noted, there may very well be others depending on once

5    we get into the substance of the counterclaim side of things.          13:43:14

6    On our side we have identified, I believe, four individuals so

7    far -- five, I'm sorry.  And we anticipate that there may be up

8    to three or so more as we start to get into this.

9          And there very well may be discovery from a third

10   party that we have also identified in our disclosures who is          13:43:39

11   going to be relevant to the counterclaim issues with respect

12   to --

13          THE COURT:  Tell me briefly what that third party is.

14          MR. AKBAR:  Sure.  So the counterclaim, as Mr.

15   Allweiss alluded to, centers on PetSmart's allegation that some          13:43:53

16   amount of the preventative maintenance work was not done up to

17   standard.  After the termination of CMS in April of 2015,

18   PetSmart has now gone to a new vendor.  That vendor is First

19   Service Network.  And as part of that vendor coming on board,

20   that vendor has now essentially gone out and they are in the          13:44:21

21   process of looking at all of the units to get a sense of their

22   current state and what will it take to at least bring the units

23   up to their service level before they start work.  And so we

24   anticipate that that vendor will be directly relevant.  And

25   whether or not a deposition becomes necessary remains to be          13:44:44

1    seen.  But there will certainly be documents whether they

2    ultimately get produced by the vendor or by PetSmart we'll

3    figure that out.  But that vendor is going to be relevant

4    mostly to the counterclaim issues.

5              THE COURT:  All right.  And tell me what expert          13:45:02

6    testimony is contemplated, Mr. Sturr, on your side.

7              MR. STURR:  I don't know that we necessarily

8    anticipate having an expert.  It would only be with respect to

9    damages.  But we may not need an expert.  Mr. Allweiss?

10             MR. ALLWEISS:  Yes.  Very well put, Mr. Sturr.  Looks   13:45:19

11   at this point, Judge, if we are going to have an expert at all

12   it might be on damages, lost profits specifically.

13             THE COURT:  Why wouldn't you have liquidated damages,

14   your contract amount?  Full billing?

15             MR. ALLWEISS:  We wouldn't need an expert for that       13:45:36

16   because it is a liquidated amount, simple:  Tonnage, units

17   times stores, times set prices equals what we're owed.

18             THE COURT:  How do you get into lost profits if you

19   win?

20             MR. ALLWEISS:  Well, the contract was terminated, we    13:45:51

21   argue, terminated early.  There was still, I think, two years

22   plus left on it.  So if there was going to be a lost profit

23   component, it would be on the unperformed part of the

24   agreement.  And obviously, that claim would be dependent upon

25   our establishing that the termination was improper or that the   13:46:15

1   termination might, even if it was proper, they still owed us

2   the balance of the contract based on the agreement of the

3   parties.

4        THE COURT:  Mr. Sturr will tell you that I scare

5   lawyers by saying things at these conferences that they think I          13:46:30

6   have made up my mind.

7        MR. ALLWEISS:  Sadly, Judge, I shouldn't say sadly,

8   Mr. Sturr has already told me that.  He had me prepped.

9        MR. STURR:  If I may.

10       THE COURT:  Right.          13:46:44

11       MR. STURR:  Part of the claim we have made here is

12   that the statement of work -- master statement -- excuse me,

13   the master agreement says you could terminate only if all

14   invoices have been paid.  Our position is at the time of

15   termination all invoices had not been paid.  Therefore, there          13:46:59

16   wasn't proper termination.  If that was the case that would be

17   the basis for lost profits.

18       THE COURT:  The question, which might scare, which is

19   just a question off the top of my head, is it seems like there

20   might be an election of damages here if there was an          13:47:15

21   improper -- if there was an agreement overriding the term --

22   the 30-day termination provision grounded on these discounts,

23   and that was breached, you have billed for the discounts.  That

24   might be your measure of damage.  And it might be inconsistent

25   with asserting -- affirming the alleged modification which          13:47:39

1   might entitle you to lost profits.  But off the top of my head

2   it seems like you probably shouldn't get both.

3         MR. STURR:  I will go back to my first answer, Your

4   Honor.  I don't think we anticipate having expert testimony.

5         THE COURT:  Right.                          13:48:02

6         MR. ALLWEISS:  We're kind of preserving our right, but

7   we get where you are coming from.  Yes, sir.

8         THE COURT:  All right.  That's fine.

9         MR. AKBAR:  Your Honor, may I add one thing to that?

10         THE COURT:  Yes.                            13:48:13

11         MR. AKBAR:  On the experts, obviously to the extent

12   they have an expert on lost profits we would likely have a

13   rebuttal.  But I share your views, at least at the moment, in

14   terms of trying to understand where the lost profits come from.

15   We also may want to have an expert on the issues relating to    13:48:28

16   the counterclaim.  And that would be an expert who is familiar

17   with the industry and can help assess and quantify the extent

18   of the damage and can show that work was not performed up to

19   standard and things of that nature.  It's, I think, too early

20   to tell whether we're going to need that because the          13:48:49

21   investigation is still ongoing.  But I just want to put that

22   out there as another possible --

23         THE COURT:  That looks like a garden variety

24   construction case.  And you probably would need experts for

25   that, would you?                                 13:49:11

1          MR. AKBAR:  Wouldn't?

2          THE COURT:  Would.

3          MR. AKBAR:  Oh, would.  I think so.  But again, from

4     our perspective, since the investigation is still ongoing we

5     have to really see what we're getting at here.  But in terms of          13:49:20

6     quantifying the damages and in terms of helping to show that

7     work was performed not up to standard, I do think --

8          THE COURT:  Has your replacement contractor already

9     told you that it was deficient work?

10          MR. AKBAR:  What they have seen so far, their view,          13:49:36

11     and again, whether you would think this is biased or not, they

12     would probably argue it is.  But they have said that they have

13     observed things that they do not believe to be consistent with

14     performing to an industry standard.

15          THE COURT:  Well, I'm just going to take that as          13:49:53

16     preliminary, and you will have to see how that plays out.

17          Well, your schedule for fact discovery seems

18     reasonable.  So we'll -- let me back up.  On the plaintiff's

19     claim, that's pretty straightforward.  That's pretty much just

20     what the negotiations and communications were, right?          13:50:20

21          MR. STURR:  Yes, Your Honor.

22          THE COURT:  But the counterclaim is messy.

23          MR. STURR:  The counterclaim is preliminary in our

24     view.  We weren't aware of any discrepancies until we received

25     the counterclaim.  And it may be an evolving claim.  That's why          13:50:36

1    I think we built in time in the discovery schedule for that

2    reason.  We didn't want to have to come back to you.

3          THE COURT:  I don't mind you coming back if things

4    develop in a way that warrants a change in the schedule.

5          MR. STURR:  That was the conversation that we had at        13:50:55

6    our 26(f) conference was we thought this was a generous period

7    of time given the matters in dispute, but we wanted to make

8    sure we were giving ourselves enough time to complete the

9    discovery not knowing fully at this point how extensive that

10   discovery may be.                                                 13:51:12

11         MR. AKBAR:  And from our perspective, Your Honor, I

12   agree on the contract side of things.  It's much more

13   straightforward.  There's going to be some ESI, and we're

14   currently in the process of negotiating an ESI protocol.  A lot

15   of this is going to be e-mails and spreadsheets and that kind    13:51:28

16   of material.  But on the counterclaim side, just to put more

17   context on the timing, when we prepared the counterclaim in

18   December the investigation by the vendor was obviously still

19   ongoing and it continues to be ongoing now.  So we're trying to

20   get our arms around what they have and when it will be done.     13:51:48

21   We don't anticipate that it is going to take much longer.  But

22   I fully agree that that's the part of the case where until we

23   really have everything laid bare for us we're not going to

24   really be able to tell the direction.  And again, that's why

25   when we had the Rule 26(f) we built the schedule as such.        13:52:08

1          THE COURT:  So one way to view it is that if the

2     counterclaim doesn't play out, eight months is more than

3     enough.  And if it does play out, it might not be enough.  But

4     actually depending -- all right.  I will tell you what.  I

5     think it makes sense to go with your schedule.  So we'll set          13:52:27

6     September 30 as the deadline for fact discovery.

7          Now, again, Mr. Akbar, are you in agreement that the

8     only prospect for expert testimony would be on the

9     counterclaim?

10         MR. AKBAR:  From our perspective, yes, unless they          13:52:50

11    also do an expert on damages in which case we'll do a rebuttal

12    to that.  But, yes, affirmatively, we do not anticipate needing

13    expert testimony on their claims.

14         THE COURT:  So, Mr. Sturr, when do you have to fish or

15    cut bait on your damage theory, at the close of the evidence?          13:53:11

16         MR. STURR:  Well, I think, Your Honor, perhaps before

17    then under Rule 26 we have to make disclosures.  And at this

18    point, we have put a placeholder in our initial Disclosure

19    Statement for anything on other than the contractual damages.

20         THE COURT:  What I'm getting to is the lost profits          13:53:32

21    aspect of the damages.

22         MR. STURR:  That's what I was alluding to, Your Honor.

23    We put a placeholder in the disclosure for lost profits.  I

24    would need to confer with Mr. Allweiss, but I think we would

25    make that determination early in the discovery process.          13:53:51

1          THE COURT:  Yeah.  It really would make sense.

2    Otherwise you are just wasting a lot of legal fees.

3          MR. STURR:  I can tell you now, Judge, I think it's

4    unlikely that we will pursue that.  But I don't want to say

5    that definitively.                                          13:54:15

6          THE COURT:  Well, you are looking at 2.6 million just

7    on your simple liquidated damage claim, so that's pretty good.

8          MR. STURR:  Yes, Your Honor.

9          THE COURT:  And lost profits, man, you know how messy

10   that is to prove.                                           13:54:27

11         All right.  So let's get back to expert disclosures.

12         You all have sequenced them to have the expert

13   disclosures begin after the close of fact discovery.  Sometimes

14   that's necessary but sometimes it's not.

15         With respect -- if you want to pursue lost profits,    13:54:48

16   doesn't seem like you would need the fact discovery to pursue

17   that.  Wouldn't that all be internal information that you could

18   give to your damage expert and have him get going?

19         MR. STURR:  Yes.

20         THE COURT:  I'm not sure of that.                      13:55:10

21         MR. STURR:  Yes.  I think that's correct.

22         THE COURT:  So we wouldn't have to wait for the close

23   of discovery for that component of expert disclosures.

24         MR. STURR:  If I may interrupt you, Your Honor, I'm

25   sorry.  We discussed this in the 26(f) conference.  And there  13:55:23

```
 1    was a request that we stagger, and I have done that in other
 2    cases.  So we agreed to do it in this case.  We would postpone
 3    the expert discovery until we completed fact discovery.
 4         THE COURT:  I like to think through whether you
 5    actually need to postpone it, and it's different in different    13:55:39
 6    cases.  So I think we have figured out that you don't really
 7    need to defer pursuing your lost damage -- lost profits damage
 8    expert disclosures to the completion of fact discovery.  So
 9    then the question is what other experts, and that's the
10    counterclaim.                                                    13:56:01
11         MR. STURR:  That's right.
12         MR. AKBAR:  And on that one, the big unknown, because
13    this is an ongoing investigation, is exactly when we're going
14    to be at a point when we're even going to have all of the
15    material in.  I would be very surprised if what we're taking     13:56:14
16    about is six months down the line, that's not what we're being
17    told.  But on the other hand, I just don't feel comfortable yet
18    saying we will have it by X and then be able to give it to an
19    expert to be able to do a report by X.
20         THE COURT:  Well, I understand you have to do more          13:56:32
21    investigation.  But what's your realistic assessment of how far
22    you need to get down the road before you make a decision
23    whether you really want to pursue that counterclaim?
24         MR. AKBAR:  Well, we need to get, from the vendor, the
25    results of the investigation and the investigation needs to be   13:56:49
```

1  complete, meaning they have been able to go out and inspect,

2  literally, thousands of HVAC units scattered around the

3  country.  And while they have made a lot of progress on it,

4  it's not done.

5        THE COURT:  What's your ballpark estimate of how long          13:57:07

6  it's going to take them to complete that?

7        MR. AKBAR:  Well, what we're --

8        THE COURT:  And give you their assessment.

9        MR. AKBAR:  We have been told that -- and the last we

10  had heard was maybe at the beginning of the year.  We had been          13:57:18

11  told it was probably going to be at least a few more weeks.

12        THE COURT:  That's fine.

13        MR. AKBAR:  This is not months and months from now.

14  But, of course, that's just us getting the documents and

15  information for the first time.  And I think what we're going          13:57:32

16  to need to do on our end, before we invest money, giving all

17  this information to an expert, because we're, the lawyers and

18  the client, are going to need to look at it and say, okay, now

19  what do we do with this?  Do we still pursue this?  What do we

20  do?  How do we frame it?          13:57:49

21        THE COURT:  One way to come at this is to not try to

22  set that schedule now and come back in a few months after they

23  have made a decision whether they are even earnest about a

24  counterclaim and then we've got a construction case on our

25  hands.  That's probably a better way to come at this than do a          13:58:10

1    contingent hypothetical scheduled for what may or may not

2    develop.

3            MR. AKBAR:  We concur.  I'm happy to agree to that.

4            Are you envisioning maybe a status conference?

5            THE COURT:  No.  We would basically, with respect to          13:58:26

6    the plaintiff's claim, I think we can finish the schedule.  I

7    would be coming back for resumption of this case management

8    conference in light of -- if, in fact, the defendant elects not

9    to pursue that counterclaim then we'll stay with the schedule

10   I'm setting today.  If you do want to pursue the counterclaim         13:58:47

11   we'll have to come up with a schedule that fits that.  It may

12   well impact on the schedule for the first claim.

13           So my thought would be for you all to do that.  And

14   actually, frankly, if you are going to pursue the counterclaim

15   I think I would want you all to give me a revised post-schedule       13:59:04

16   key to that.  And like I said, even though the schedule is set

17   now for the plaintiff's claim we'll schedule -- we'll mesh

18   everything together so it all works together even if it means

19   changing what I have said today.

20           So everybody is in agreement, right?                          13:59:26

21           MR. STURR:  Yes, sir.

22           MR. AKBAR:  Yes.

23           THE COURT:  Let me finish the schedule.  I guess this

24   will be on the assumption the counterclaim does not go and it

25   will all be up for revision if we have to schedule a                  13:59:37

1    counterclaim.

2         All right.  On that hypothesis, I would think we could

3    have, if there's going to be disclosures on damages, that could

4    all be completed by the September 30 date as well.  So let's

5    just count backwards.  Really, that leaves plenty of time.        14:00:05

6    Well, we could set -- it would be the plaintiff's initial

7    expert disclosure and lost profit damages, perhaps the -- how

8    about the middle of May?  And then we might set the end of June

9    for the defendant's initial expert disclosures on that, purely

10   rebuttal disclosures by middle to late July.  And that will      14:01:02

11   leave you two months to do depositions of those experts.  That

12   sounds like a pretty leisurely schedule, doesn't it?

13        MR. STURR:  Yes, Your Honor.

14        THE COURT:  All right.  Let's set May 20 for the

15   plaintiff's initial expert disclosures; June 30 for the          14:01:20

16   defendant's responding and initial expert disclosures.  That's

17   actually on a Thursday.  But some day you will thank me for not

18   setting it on Friday, July 1st.  So and then we'll set July

19   22nd for any purely rebuttal disclosures by the plaintiff and

20   September 30 also for the close of all expert discovery.          14:01:52

21        MR. AKBAR:  Your Honor, may I clarify?

22        THE COURT:  Yes.

23        MR. AKBAR:  The June 30th date for our response, is

24   that date for at least the moment also a date by which we would

25   have to disclose experts?                                         14:02:19

1          THE COURT:  Yes.  You would have to supply your

2     written expert disclosure.  So that's giving you about six

3     weeks for that.

4          I'm just thinking through whether -- how much of the

5     rest of my schedule makes sense to set now understanding that      14:03:15

6     we have a very big contingency here?  I guess the only

7     principal thing is we could set a dispositive motions deadline

8     but that would be on the assumption we don't have to come back

9     to talk about the counterclaim.  I think we'll go ahead and do

10    that.  But we'll have to reset that if we do come back.      14:03:58

11         So with the close of discovery on September 30th, 30

12    days should be enough for motions, correct?

13         MR. AKBAR:  Yes.

14         MR. STURR:  Yes, Your Honor.

15         THE COURT:  We'll set -- we'll make it Friday, October      14:04:14

16    28th.  I almost always set deadlines on Fridays.  I know that's

17    when lawyers get things done.

18         So does it make a -- now, I require in every case that

19    the parties have a good faith settlement conference.  I require

20    that the parties and counsel meet, and that means human beings      14:04:38

21    with settlement authority at the same time and the same place.

22    You have to talk about settlement.  You don't have to settle

23    the case.  You don't even have to make a settlement offer.  You

24    all have to be there and you have to talk about it, and you

25    have to file a one-line report telling me you did that.  And I      14:04:56

1    do that to get over the barriers to communication that exist in

2    some cases, perhaps not in this case, and also to require

3    everybody to think about settlement at the same time so we

4    don't have a lot of energy put into it on one side that sits in

5    somebody's in-box for 60 days.                                    14:05:19

6          Now, you all had suggested -- what had you suggested

7    here.  I don't recall what day you suggested.

8          MR. STURR:  I'm sorry, Your Honor?

9          THE COURT:  Had you all made a suggested --

10         MR. ALLWEISS:  November 11, 2016.                            14:05:39

11         MR. STURR:  As a deadline.

12         THE COURT:  Right.

13         MR. STURR:  For -- I think we were referring to a sort

14   of an informal settlement process.  As I noted in the report

15   those discussions are already underway.  There's a meeting of    14:05:51

16   principals that will take place within two weeks.

17         MR. ALLWEISS:  February 2nd.

18         THE COURT:  Tell you what.  I'm just going to set a

19   generous time, because you can satisfy my requirement tomorrow

20   if you want.  I just set a time by which time you have to have    14:06:08

21   done it.  That doesn't look like that's going to be a problem

22   so I will just set a generous time.  Why don't we just set

23   September 30 also.  I would expect you would have done that

24   long before then.

25         Now, if you do want a settlement conference with a          14:06:25

1    magistrate judge and you both request it, I will order that.

2    Bear in mind that it takes the magistrate judges six weeks,

3    maybe longer, to get it on their schedule.  So if you have a

4    time in mind be sure to get the request in enough in advance so

5    that we can get that done.  This might -- well, yeah.                14:06:43

6          MR. STURR:  Our expectation is we hope the direct

7    discussions will be fruitful.  If not, and we get to the point

8    where a third party is helpful, we would either request the

9    magistrate judge or agree to a private mediator.

10         THE COURT:  If this turns into a construction case, it        14:07:02

11   really changes the lay of the land.  I give this speech in

12   every construction case, and that is, if you really have a

13   construction lawsuit, and if you think you are right, as

14   opposed to betting on jury confusion, think about the wisdom of

15   submitting it to binding arbitration with somebody                  14:07:28

16   knowledgeable about construction.  It's much less expensive to

17   process.  Your prospect of getting an accurate decision is much

18   higher.

19         And actually, I think maybe -- I don't know if anybody

20   ever takes me up on it, but they usually get their construction    14:07:44

21   cases settled.  So maybe it doesn't matter.

22         And you could proceed on both tracks.  If we wanted to

23   have a trial on the plaintiff's claim we could do that

24   consistent with the submission of a construction counterclaim

25   to binding arbitration, and we would sequence that so that both     14:08:03

1   matters are judgments entered at the same time so we don't have

2   a problem of asynchronous judgments being entered.  So there

3   are a variety of ways you all can deal with that.

4           All right.  Nick, I think that's everything on my list

5   that we can do today, right?                                    14:08:31

6           THE COURTROOM DEPUTY:  Do you want a pretrial order

7   deadline?

8           THE COURT:  Oh, yeah.  Pretrial order deadline.

9           I set a contingent date for submission of a proposed

10  joint final pretrial statement in event there are no            14:08:47

11  dispositive motions.  But that date will drop out and I will

12  reset it after ruling on the dispositive motions.  So if I'm

13  giving you to October 28th, you are going to know long before

14  October 28th whether any dispositive motions are being filed.

15          So, perhaps, tell you what.  I think I'd like to set    14:09:05

16  November 18 as the deadline for submission of a proposed joint

17  final pretrial statement because that's the Friday before

18  Thanksgiving week, and I don't want to ruin anyone's

19  Thanksgiving.

20          Counsel, is there anything else that either of you      14:09:27

21  would like to bring up that would assist us in processing the

22  case?

23          MR. STURR:  Not from the plaintiff's side, Your Honor.

24          MR. AKBAR:  Just a question.  With respect to the

25  schedule and really with respect to the counterclaim, if it    14:09:38

1   turns out that the counterclaim takes on a life of its own and

2   such, how would you like us to come back to you?

3         THE COURT:  Well, you know, I guess I was thinking

4   that as soon as you make that decision, either let the other

5   side know -- if you are not going to pursue the counterclaim,         14:09:57

6   let them know.  Also let me know.  But if you are -- I would

7   want you to request a resumption of this conference, but as I

8   said, I would like you both to submit proposed additional

9   schedules in light of that before we come in.

10        So I don't know if I need to set a deadline for that.         14:10:16

11        MR. STURR:  Would it be helpful for the Court if we

12   picked a date and agreed to give you a status report on these

13   issues?

14        THE COURT:  The ball is in your court, Mr. Akbar, so

15   what date would you suggest?         14:10:30

16        MR. AKBAR:  I want to say at least in April.  That

17   gives us enough time.  So can we say maybe April 15th or so,

18   depending on what day of the week that is?

19        THE COURT:  Well, it's a Friday but you will all be

20   busy paying your income taxes on all that money you are making.         14:10:54

21        Is that an okay date?

22        MR. STURR:  That's fine, Your Honor.  I just think it

23   would helpful for us and for the Court if we were to give you

24   an update on where we are on the lost profits claim and the --

25        THE COURT:  Yes.  Right.  Right.  Well, that ball is         14:11:19

1    in your court.  So what date would you suggest that I set for

2    you to update?

3            MR. STURR:  I think the middle of April is probably

4    fine, Your Honor.

5            THE COURT:  We'll set April 15 as the date for status    14:11:28

6    conference for both sides as to those two questions as to where

7    you stand.  And depending on what your answer is, as I said, it

8    may occasion some adjustments to the schedule.

9            Anything else, Mr. Akbar?

10           MR. AKBAR:  Nothing from our perspective, Your Honor.    14:11:54

11           THE COURT:  So I just figured out what you all should

12   do, is if that counterclaim is pursued send that to an

13   arbitrator and come try the main case.  Because I'd love to try

14   that case.  We don't get many really good business trials here.

15   It's what I used to do.  And my law clerks don't have enough    14:12:14

16   occasion to see good business trials.  So I'm sure you all will

17   try a good case for me.

18           MR. AKBAR:  Let's call off the settlement meeting.

19   Judge's prerogative.

20           MR. ALLWEISS:  I'm sure we could stir up some more       14:12:29

21   disputes and be right back here on something else if we had to.

22           THE COURT:  Seriously, though, I do wish you luck on

23   getting it resolved.

24           We'll be adjourned.

25           (Proceeding concluded at 2:12 p.m.)                      14:12:41

1

2

3

4                          C E R T I F I C A T E

5

6          I, LAURIE A. ADAMS, do hereby certify that I am duly

7  appointed and qualified to act as Official Court Reporter for

8  the United States District Court for the District of Arizona.

9          I FURTHER CERTIFY that the foregoing pages constitute

10 a full, true, and accurate transcript of all of that portion of

11 the proceedings contained herein, had in the above-entitled

12 cause on the date specified therein, and that said transcript

13 was prepared under my direction and control.

14          DATED at Phoenix, Arizona, this 10th day of January,

15 2017.

16

17                              s/Laurie A. Adams

18                              _____

                                Laurie A. Adams, RMR, CRR

19

20

21

22

23

24

25